TRUCK INSURANCE EXCHANGE, a California reciprocal or interinsurance exchange, and St. Francis Medical Center, a California corporation, Plaintiffs,

v.

Thomas Ross TETZLAFF, M.D., Thomas Ross Tetzlaff, M.D., Inc., a Nevada corporation, Defendants.

No. CV–N–87–541–ECR.

United States District Court, D. Nevada.

Feb. 17, 1988.

Randall L. Shelley and Linda C. Miller, Sherman Oaks, Cal. and Margo Piscevich, Reno, Nev., for plaintiffs.

Charles T. Durante, and George W. Swainston, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

### INTRODUCTION

Two matters are before the Court in this case. First is a Motion to Dismiss Complaint (docket # 11) filed by defendants. The second matter before the Court is a Demand for Security (docket # 12) filed by defendants. A choice of law issue is the crux of both matters.

This case was filed on May 5, 1987, (received and returned on May 1, 1987) in the United States District Court for the Central District of California. Truck Insurance Exchange ("Truck") and St. Francis Medical Center ("St. Francis") bring action against Dr. Thomas Ross Tetzlaff and Thomas Ross Tetzlaff, M.D., Inc. (collectively "Dr. Tetzlaff") for indemnification.

Truck, at the times relevant to this case, was an insurer of St. Francis. On December 22, 1983, St. Francis was sued by Jamie Liston and others (collectively "Listons") for negligence. Apparently, Dr. Tetzlaff was named as a third-party defendant in that case but was later dismissed for lack of personal jurisdiction. On May 9, 1986, St. Francis and its insurer, Truck, settled the 1983 action. St. Francis and Truck paid $375,000 to the Listons pursuant to the settlement. In the present case St. Francis and Truck allege that the injuries for which the Listons recovered $375,000 were caused by the negligence of Dr. Tetzlaff in treating Jamie Liston.

There was a motion in this case in the Central District of California for dismissal based on lack of personal jurisdiction or, in the alternative, for transfer pursuant to 28 U.S.C. § 1404; that motion was opposed by the plaintiffs on October 5, 1987 (*see* docket # 7 and # 8). On October 22, 1987, the Central District of California court entered an order approving a stipulation that the present case be transferred to the District of Nevada (docket # 9). The stipulation stated that the transfer was pursuant to 28 U.S.C. § 1404, but stated no specific reasons for the transfer.

### THE MOTION TO DISMISS COMPLAINT

On November 10, 1987, defendants filed the Motion to Dismiss Complaint (docket # 11) which is before the Court. The plaintiffs opposed the motion on November 25, 1987 (docket # 17). Defendants replied on December 21, 1987 (docket # 22).

The defendants assert in their motion that NRS § 41A.016 requires that the present case be submitted to a screening panel before it may proceed in this Court. Defendants cite the case of *Feinstein v. Massachusetts General Hospital*, 643 F.2d 880 (1st Cir.1981), for the proposition that a federal district court with diversity jurisdiction should apply a state medical malpractice screening provision such as NRS § 41A.016.

In response, the plaintiffs argue that NRS § 41A.016 does not apply, as the laws of the forum state of the transferor court apply in cases transferred for the convenience of parties and witnesses pursuant to 28 U.S.C. § 1404; that defendants waived any rights they may have had under NRS § 41A.016 by stipulating to the transfer; that NRS § 41A.016 is inapplicable in cases transferred under 28 U.S.C. § 1404; that the present action is one for indemnity and not medical malpractice, and, therefore, NRS § 41A.016 is inapplicable; that NRS § 41A.016 is discretionary and not manda-

tory, and, in this case, should not be applied. In the alternative, plaintiffs argue that, if the Court determines that NRS § 41A.016 applies, this action should be stayed while they proceed before the screening panel. This request is made by plaintiffs in light of the statute of limitations.

In reply, the defendants argue first that this case was transferred for jurisdictional purposes rather than for the convenience of parties and witnesses, and, therefore, the laws of the forum state of the transferee court apply. Alternatively, defendants assert that, even if the laws of the forum state of the transferor court apply, Nevada law should be applied since the United States District Court for the Central District of California would have applied Nevada law under the California choice of law analysis. Defendants also contest the plaintiffs' position that a stay is a possibility in this case, arguing that NRS § 41A.016 requires immediate dismissal.

The choice of law in this case is the crucial issue. The first question in resolving the issue is whether the choice of law rules of California or Nevada apply. In analyzing this question, the Court must distinguish between cases transferred for convenience and cases transferred to cure a lack of personal jurisdiction. If this case was transferred under 28 U.S.C. § 1404 for the convenience of parties and witnesses, the choice of law rules of the forum state of the transferor court, California, would apply. *See Nelson v. International Paint Co.*, 716 F.2d 640, 643 (9th Cir.1983). If, on the other hand, this case was transferred under 28 U.S.C. § 1404 to cure a lack of personal jurisdiction, the choice of law rules of the forum state of the transferee court, Nevada, would apply. *Id.*

The stipulation does not disclose the reasons for the transfer; it states only that the transfer was pursuant to 28 U.S.C. § 1404. At the time of the transfer, a motion addressing the possible absence of personal jurisdiction was pending. The district court, however, made no findings with regard to personal jurisdiction prior to the transfer. The record is unclear as to the reason for the transfer.

■ This Court finds that it need not decide whether the transfer was for convenience or to cure a lack of personal jurisdiction. The choice of law to be applied in this case is the same under either the Nevada or California analysis.

The choice of law rule in the Nevada state courts in tort cases is the First Restatement's vested rights theory (also known as the *lex loci* rule). *Laxalt v. McClatchy*, 116 F.R.D. 438, 447 (D.Nev. 1987). Under the First Restatement, the law of the place of the wrong controls all substantive issues in the lawsuit. *Id.* The place of the wrong is recognized as the place where the injury is incurred. *Id.* The alleged wrong in this case was negligent treatment of Jamie Liston by Dr. Tetzlaff. The treatment occurred in Nevada; the parties agree as to this fact. The place of the wrong in this case is Nevada, and, therefore, under Nevada's choice of law rule, Nevada substantive law applies.

The California state courts apply a "governmental interest" analysis in resolving choice of law issues. *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir.1987); *In re Yagman*, 796 F.2d 1165, 1170 (9th Cir.1986); *Wong v. Tenneco, Inc.*, 39 Cal.3d 126, 702 P.2d 570, 216 Cal.Rptr. 412 (1985); *Offshore Rental Co. v. Continental Oil Co.*, 22 Cal.3d 157, 583 P.2d 721, 148 Cal.Rptr. 867 (1978); *Hurtado v. Superior Court*, 11 Cal.3d 574, 522 P.2d 666, 114 Cal.Rptr. 106 (1974). Under the governmental interest approach the court must first determine if the laws of the two states differ. If they do, the court next determines whether each state has an interest in the application of its law. If only one state has an interest, there is no "true conflict" of laws and the court applies the law of the interested state. If both states have an interest in having their law applied, a true conflict exists; if this is so, the court applies the law of the state which has the interest which would be most impaired if its law were not applied. *Ledesma*, 816 F.2d at 484.

**226**

The Court is certainly faced with a situation where the laws of the two possible jurisdictions, California and Nevada, differ. Nevada law would require the present case to be submitted to a screening panel before it may be pursued in court; California law apparently imposes no such requirement.

The Court further determines that both California and Nevada have an interest in application of their respective laws in the present case. California's interest involves the speedy and efficient resolution of medical malpractice actions; it involves, moreover, the efficacious placement of liability with the party legally responsible for injury caused to California citizens through medical malpractice. Nevada's interest involves the protection of its health care providers from frivolous medical malpractice claims. This interest is tied closely to the interest of controlling malpractice insurance rates and ultimately the cost of health care. A true conflict exists.

The Court determines that the interests of Nevada are in more danger of being impaired than the interests of California. The Nevada legislation is a response to a problem of insurance costs which has an effect on the cost of health care. If chapter 41A of the Nevada Revised Statutes is not applied in this case, the state's scheme of protection of health care providers is circumvented by the mere fact that this diversity case was first filed in a California federal court. On the other hand, California's interests are not severely undermined by the application of NRS, chapter 41A, in this case. The Listons have been compensated in California court; no California interest pertaining to them is implicated. Furthermore, California's interest in seeing that liability is fairly allocated is set back only to the extent that application of Nevada's laws causes delay. That delay will be slight. The plaintiffs herein will not be denied a forum to resolve this case. Because Nevada's interests are in more danger of being undermined than California's, the California choice of law analysis leads to Nevada substantive law.

Under both the Nevada and the California choice of law rules, Nevada law applies in this case. Moreover, the defendants' citation of *Feinstein v. Massachusetts General Hospital*, 643 F.2d 880 (1st Cir. 1981), is well taken; NRS § 41A.016 is applicable in this diversity case.

■ The Court has considered the arguments of the plaintiffs as to the applicability to this case of NRS § 41A.016, and finds them to be without merit. The Court cannot find a waiver of defendants' rights under chapter 41A in the stipulation to transfer. Further, the Court cannot rule that NRS § 41A.016 is inapplicable to any case transferred for the convenience of parties and witnesses; to so rule would allow a plaintiff to alter the law applicable to a case by filing outside the ultimate forum. The Court finds that, although this is an indemnity action, the asserted liability is clearly grounded on alleged medical malpractice. Finally this Court finds that NRS § 41A.016 is a mandatory provision. In this case the Court has no discretion to refuse to apply NRS § 41A.016.

■ The Court does agree with plaintiffs, however, that the present case should be stayed while plaintiffs comply with the mandates of chapter 41A of the Nevada Revised Statutes. A dismissal of plaintiffs' complaint at this juncture would raise a threat to the plaintiffs' case as a result of the statute of limitations. The circumstance of the transfer of plaintiffs' case plus the application of NRS § 41A.016 should not deprive the plaintiffs of a forum. The Court acknowledges language in NRS § 41A.016 which provides that "any action filed without satisfying the requirements of [NRS 41A.003–41A.069] is subject to dismissal without prejudice for failure to comply with this section." The phrase "subject to dismissal" does not make dismissal mandatory. The Court holds that a stay under the circumstances of this case is consistent with chapter 41A.

The present case shall be stayed while the plaintiffs present their claims to the screening panel. The plaintiffs are expected to pursue their action before the screening panel in a diligent matter. The Court cautions plaintiffs that it retains the discretion to dismiss the case for failure to com-

ply with NRS § 41A.016 in case of undue delay.

Because the Court determines that a stay rather than dismissal is appropriate, the defendants' Motion to Dismiss Complaint shall be denied.

## THE DEMAND FOR SECURITY

■ The defendants filed a Demand for Security of Costs and Charges (docket # 12) on November 10, 1987. The plaintiffs filed an opposition to the demand on December 3, 1987 (docket # 19). On December 21, 1987, the defendants replied (docket # 21).

The points and authorities in support of defendants' demand assert that NRS § 18.130 applies to the present case, and requires each plaintiff to provide security in the amount of $1000 (500 for each defendant). Defendants point out that the plaintiffs' complaint establishes that the plaintiffs are California entities.

In opposition the plaintiffs raise the choice of law issue. Plaintiffs also argue that, by stipulating to answer within a certain amount of time (*see* docket # 9), the defendants waived any rights they may have had under NRS § 18.130. Finally, the plaintiffs argue that NRS § 18.130, if it applies, requires the provision by each plaintiff of $500 total security as opposed to $500 security for each defendant. The plaintiffs submitted, with their opposition, a bond in the amount of $500 from each plaintiff.

In reply, the defendants contest the plaintiffs' choice of law conclusions. Defendants also reassert their position that NRS § 18.130 requires security to be provided by each plaintiff in the amount of $500 per defendant.

The choice of law issue is, in large part, covered by the above discussion. The outcome of both the Nevada and California choice of law analyses, vis-a-vis NRS § 18.130, is the same: Nevada substantive law applies.

As to the California governmental interests approach, it must be added that, again, the Court faces a situation in which California law and Nevada law differ. Both states arguably have an interest in the application of their respective laws. California's interest involves the rights of California plaintiffs. Nevada's interest involves protection of Nevada defendants. The Court finds that the interest of Nevada should prevail. The California plaintiffs are in no danger of a denial of a resolution of their action.

Because both the Nevada and California choice of law analyses lead to Nevada law, NRS § 18.130 is applicable in this diversity case. *See, Arrambide v. St. Mary's Hospital*, 647 F.Supp. 1148 (D.Nev.1986); *Hamar v. Hyatt Corp.*, 98 F.R.D. 305 (D.Nev. 1983). Moreover, the Court finds that the defendants have not waived their rights under NRS § 18.130.

■ The Court holds that NRS § 18.130 requires each plaintiff in this case to provide security in the amount of $1000, $500 per defendant. The Court rejects the plaintiffs' contention that NRS § 18.130 requires each plaintiff in this case to provide only $500.

The Court has ruled herein that Nevada substantive law is applicable to this case. The task of this Court is to approximate state law as closely as possible. *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980). Where Nevada's highest court has not decided an issue, this Court must predict how the state high court would resolve it. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986).

The statute itself provides little guidance. Defendants point to the following language:

> When a plaintiff in an action resides out of the state, or is a foreign corporation, security for the costs and charges which may be awarded against such plaintiff may be required by the defendant, by the filing and service on plaintiff of a written demand therefor within the time limited for answering the complaint.

NRS § 18.130. The Court finds little significance in the singular "defendant."

Furthermore, the Court finds no authority which provides guidance on the question

of the proper application of NRS § 18.130 in cases involving multiple defendants.

The Court finds that the clear purposes of NRS § 18.130 can be advanced only if that statute is read to require security in the amount of $500 per defendant from each plaintiff. Defendants incur costs separately. In a case involving numerous defendants, the protection provided defendants by NRS § 18.130 could be greatly diminished by reading that statute to require security of $500 total from each plaintiff. Such a reading would render the amount of protection provided by NRS § 18.130 dependent on the number of named defendants. The better reading of NRS § 18.130 is that it requires $500 security for each defendant. Such a reading insures that all defendants are protected equally by NRS § 18.130 without regard to the number of named defendants.

The Court acknowledges the burden this may place on some plaintiffs. This Court's ruling in the case of *Arrambide v. St. Mary's Hospital,* 647 F.Supp. 1148 (D.Nev. 1986), however, insures that an indigent plaintiff would not be denied access to the courts as a result of the application of NRS § 18.130. An indigent plaintiff need not provide security under NRS § 18.130. *Id.;* 28 U.S.C. § 1915.

The Court finds that if faced with the issue, the state high court would require each plaintiff in this case to provide security in the amount of $1000.

ORDERS

IT IS, THEREFORE, HEREBY ORDERED that the defendants' Motion to Dismiss Complaint (docket # 11), filed November 10, 1987, is DENIED.

IT IS FURTHER ORDERED that this case is stayed pending the plaintiffs' compliance with the provisions of chapter 41A of the Nevada Revised Statutes, and, specifically, NRS § 41A.016.

IT IS FURTHER ORDERED that NRS § 18.130 is applicable to the present case and that the defendants' Demand for Security of Costs and Charges (docket # 12), filed November 10, 1987, requires the pro-

vision of security by plaintiffs in the amount of $1000 from each plaintiff.