**George W. ABBOTT, Plaintiff,**

v.

**UNITED VENTURE CAPITAL, INC., a Nevada corporation, Inn Management, Inc., a Nevada corporation, Seth L. Atwood, Robert J. Angres, and Mark H. Gunderson, Defendants.**

**Nos. CV–R–86–593–ECR,
CV–N–87–106–ECR.**

United States District Court,
D. Nevada.

May 22, 1989.

See also 718 F.Supp. 823.

Thomas M. Kelly, Minden, Nev., for plaintiff.

George W. Abbott, Minden, Nev., pro se.

Mark H. Gunderson, Reno, Nev., Kim Hagerty, Incline Village, Nev., and Pinkerton & Polaha, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

### STATEMENT OF THE CASE

The matter before the Court involves a lawsuit brought by George Abbott ("Abbott") against defendants United Venture Capital, Inc. ("UVC"), Inn Management,

Inc. ("Inn"), Seth Atwood ("Atwood"), Robert Angres ("Angres"), and Mark Gunderson ("Gunderson") (hereinafter collectively referred to as "defendants"). This lawsuit is comprised of two separate complaints which this Court has consolidated into one action. *See* Minute Order entered April 27, 1989 (document # 66 in CV–R–86–593–ECR). The motions currently at issue relate solely to Abbott's second complaint, which originally was docketed as Case No. CV–N–87–106–ECR. In this complaint, Abbott charges defendants with malicious prosecution, abuse of process, intentional infliction of emotional distress, and civil conspiracy. In addition, Abbott seeks punitive damages from defendants under NRS § 42.010 on the theory that defendants acted with malice, fraudulent intent, and oppressive motives. *See* First Amended Complaint entered May 17, 1989 (document # 73 in CV–R–86–593–ECR) (hereinafter referred to as "Complaint").

Abbott's complaint is premised on the defendants' conduct in filing a separate and distinct lawsuit against Abbott in May of 1985. This lawsuit accused Abbott, who was and is an attorney, and many other individuals and corporations of, *inter alia,* fraud, conspiracy, and numerous violations of both federal securities laws and federal racketeering statutes. *See United Venture Capital, Inc. v. Pordon,* CV–R–85–278–BRT (D.Nev., complaint filed May 31, 1985). The origin of this lawsuit was a dispute between UVC and one of Abbott's clients, regarding the clients' procurement and use of several millions of dollars in loans from UVC.

Abbott's instant complaint is also based on the defendants' alleged conduct subsequent to the filing of their lawsuit against Abbott. First, Abbott alleges that Gunderson, acting as an attorney on behalf of UVC, Inn, Atwood, and Angres, sent a letter to a local newspaper announcing the suit against Abbott. This letter allegedly resulted in widespread publicity surrounding the accusations that defendants had made against Abbott. *See* Complaint at ¶¶ 10–12. Secondly, Abbott alleges that Angres filed a formal grievance against him with the Nevada State Bar. *Id.* at

¶ 18. Thirdly, Abbott accuses Gunderson of attempting to intimidate him by mailing him newspaper clippings regarding the stigma of defending against racketeering charges. *Id.* at ¶¶ 19–20. Finally, Abbott alleges that during the course of defendants' lawsuit against him, defendants repeatedly frustrated his legitimate attempts at discovery. *See id.* at ¶¶ 31–34.

On March 5, 1986, UVC voluntarily dismissed Abbott from its lawsuit pursuant to Fed.R.Civ.P. 41(a). This dismissal was without prejudice to renew the lawsuit. *United Venture Capital, Inc. v. Pordon,* CV–R–85–278–BRT (D.Nev. March 5, 1986) (document # 48). A little over two months later, the remainder of UVC's lawsuit was dismissed with prejudice. *Id.* (D.Nev. May 21, 1986) (document # 62).

In regard to the case at bar, defendants filed two motions to dismiss Abbott's instant complaint for failure to state a claim on which relief can be granted. Pursuant to this Court's order of June 29, 1987, these motions were submitted to the United States Magistrate for her consideration. On April 18, 1988, the Magistrate filed a Report and Recommendation in which she advised the denial of defendants' motions in their entirety. *See* Magistrate's Report and Recommendation entered April 18, 1988, CV–N–87–106–ECR (document # 35) (hereinafter referred to as "First R & R"). Defendants filed objections to the Magistrate's Report and Recommendation in accordance with United States District of Nevada Local Rule of Practice 510–2.

Prior to these objections being filed with the Court, however, defendants filed a motion for summary judgment. Their summary judgment motion contained largely the same legal arguments as their motions to dismiss, but was supplemented by the deposition testimony of Abbott. The Magistrate reviewed this summary judgment motion and recommended its denial for essentially the same reasons as she recommended the denial of defendants' motions to dismiss. *See* Magistrate's Report and Recommendation entered November 10, 1988, CV–N–87–106–ECR (document # 56) (hereinafter referred to as "Second R &

R"). Defendants once again have filed timely objections to the Magistrate's Report and Recommendation.

Defendants' objections to the Magistrate's Second R & R are highly duplicative of their objections to her First R & R. Indeed, their second set of objections contains all of the legal arguments presented in their first set of objections. Their second set of objections also adds a few additional arguments that specifically are addressed to the nature of summary judgment motions. In light of the manner in which defendants' second set of objections completely incorporates their first set of objections, this Court shall focus its attention on their second set of objections. In essence, therefore, this Court shall merge defendants' motions to dismiss and their motion for summary judgment and shall treat all their motions as a single motion for summary judgment. *Cf.* Fed.R.Civ.P. 12(b) (where motion to dismiss includes matters outside the pleadings, court may treat motion as one for summary judgment).

Defendants' second set of objections are now ripe for review by this Court. Accordingly, we shall undertake a *de novo* review of these objections and shall also review defendants' underlying motion for summary judgment. *See* 28 U.S.C. § 636(b)(1); United States District of Nevada Local Rule of Practice 510–2.

## APPLICABLE LEGAL STANDARDS

■ As a preliminary matter, defendants contend that the Magistrate applied incorrect legal standards in recommending the denial of their motion for summary judgment. First, they argue that Abbott's failure to cite any statutory or case authority in his opposition to their motion for summary judgment constitutes consent by Abbott to the granting of their motion. As support for this argument, they point to United States District of Nevada Local Rule of Practice 140–6. Secondly, defendants maintain that since Abbott did not include any affidavits or other evidence in his opposition, their summary judgment motion should be granted pursuant to Fed.R.Civ.P. 56(e).

Defendants are wrong in both respects. United States District of Nevada Local Rule of Practice 140–6 only applies where a party has not filed *any* memorandum of points and authorities in opposition to a motion. This rule does not require parties to include certain types of authority in their oppositions. Since Abbott did indeed file an opposition to defendants' motion for summary judgment, Local Rule of Practice 140–6 has no bearing on the matter. Moreover, this Court finds that due to the great similarity between defendants' summary judgment motion and their prior motions to dismiss, Abbott acted properly in basing his summary judgment opposition on his previously filed opposition to the motions to dismiss.

Defendants also are incorrect in asserting that their motion for summary judgment must be granted merely because Abbott did not present any evidence in his opposition to this motion. In a summary judgment motion, the moving party has the initial burden of establishing that there is no genuine issue of material fact. Only once this burden is met does the burden shift to the opposing party to set forth specific evidence of a genuine and material issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Thus, in the instant case, defendants have the burden of establishing that no issue of material fact exists and that they are "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Defendants will not have met this burden if the evidence they presented discloses a material issue of fact. Under such circumstances, summary judgment would be inappropriate because "there [would be] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Consequently, Abbott's complaint may well survive defendants' summary judgment motion despite Abbott's failure to present any evidence in opposition.

## APPLICABLE BODY OF LAW

█ Abbott's instant lawsuit is before this Court on the basis of diversity jurisdiction. *See* Order entered November 9, 1989 (document # 57 in CV–N–87–106–ECR). In diversity cases, federal courts must apply the substantive law of the forum state. *Kabatoff v. Safeco Ins. Co. of America,* 627 F.2d 207, 209 (9th Cir.1980); *King v. Penrod Drilling Co.,* 652 F.Supp. 1331, 1333 (D.Nev.1987). In the instant case, Nevada is the forum state because all of the defendants' allegedly tortious conduct occurred in Nevada.

█ In applying Nevada's substantive law, "[t]he task of this Court is to approximate state law as closely as possible." *Truck Ins. Exchange v. Tetzlaff,* 683 F.Supp. 223, 227 (D.Nev.1988) (citing *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir. 1980)). If Nevada's highest court has not decided a particular issue, "this Court must predict how the state high court would resolve it." *Id.* (citing *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1482 (9th Cir. 1986), *modified,* 810 F.2d 1517 (9th Cir. 1987)). Furthermore, this Court must apply Nevada law as it is, not as it ought to be. *Klingebiel v. Lockheed Aircraft Corp.,* 494 F.2d 345, 346–47 (9th Cir.1974); *Southern Pacific Transp. Co. v. United States,* 462 F.Supp. 1227, 1233 (E.D.Cal. 1978). This Court is not free to predict possible changes in the Nevada law. *Moore v. R.G. Indus., Inc.,* 789 F.2d 1326, 1327 (9th Cir.1986). Nor are we free to engraft upon prior state decisions exceptions or modifications that have not been adopted by the state courts. *See Stancil v. Mergenthaler Linotype Co.,* 589 F.Supp. 78, 81 (D.Haw.1984); *see also Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975).

## MALICIOUS PROSECUTION

Defendants argue that Abbott cannot maintain a cause of action against them for malicious prosecution. They argue that an essential element of this cause of action is a favorable termination of the prior proceeding. In the instant case, they contend that Abbott cannot satisfy this element because they voluntarily dismissed him, without prejudice, from the prior proceeding. Thus, their position is that a voluntary dismissal without prejudice does not constitute a "favorable termination" for the purposes of a subsequent malicious prosecution claim.

█ In analyzing this argument, the Magistrate found that "no Nevada law [exists] on the issue of the effect of a voluntary dismissal on a later claim of malicious prosecution." First R & R at 7. She also found, however, that several state courts had ruled that a voluntary dismissal based on non-technical grounds could constitute a favorable termination. Since defendants had not shown that their voluntary dismissal of Abbott was for technical reasons, the Magistrate recommended that this Court deny defendants' argument as to this claim. *See id.; see also* Second R & R at 3. While this Court shall adopt the Magistrate's recommendation, we do so on the basis of slightly different reasoning.

This Court recognizes that in Nevada, as in almost all jurisdictions, one of the elements of a malicious prosecution claim is a favorable termination of the prior proceeding. *Cf. Chapman v. City of Reno,* 85 Nev. 365, 369, 455 P.2d 618, 620 (1969); *Catrone v. 105 Casino Corp.,* 82 Nev. 166, 168–69, 414 P.2d 106, 107–08 (1966). This Court also recognizes that no Nevada state court has determined whether a voluntary dismissal without prejudice satisfies the favorable termination requirement. Due to this void in Nevada state law, this Court must predict how the Nevada Supreme Court would resolve this issue. *See Dimidowich,* 803 F.2d at 1482.

This Court finds that the Nevada Supreme Court would likely turn to the Restatement (Second) of Torts (hereinafter referred to as "the Restatement") for guidance on this issue. Our finding is based on the fact that Nevada's highest court has often shown a willingness to rely on the Restatement. *See, e.g., Early v. N.L.V. Casino Corp.,* 100 Nev. 200, 203–04, 678 P.2d 683, 684–85 (1984) (adopting Restatement's test for determining when a proprietor has a duty to protect invited guests

from a third party); *Nevada Indep. Broadcasting Corp. v. Allen,* 99 Nev. 404, 409–11, 664 P.2d 337, 341 (1983) (accepting Restatement's rule that defamatory words that cause persons not to vote for a non-incumbent candidate constitute slander per se); *Davies v. Butler,* 95 Nev. 763, 774, 602 P.2d 605, 612 (1979) (applying Restatement's analysis of when consent can be a defense to the tort of battery).

Furthermore, in recent years, at least three other state supreme courts explicitly have adopted the Restatement's test for determining whether a voluntary dismissal can support a subsequent malicious prosecution action. *See Barrett Mobile Home Transport, Inc. v. McGugin,* 530 So.2d 730, 735–36 (Ala.1988); *Frey v. Stoneman,* 150 Ariz. 106, 722 P.2d 274, 278–79 (1986); *Nelson v. Miller,* 233 Kan. 122, 660 P.2d 1361, 1363–65 (1983). Other state courts also have applied the Restatement's approach to this issue, albeit without express reference to the Restatement. *See, e.g., Weaver v. Superior Court,* 95 Cal.App.3d 166, 184–85, 156 Cal.Rptr. 745, 755–56 (1979); *Colli v. Kamins,* 39 Conn.Supp. 75, 468 A.2d 295, 296–97 (1983); *Wong v. Tabor,* 422 N.E.2d 1279, 1284–85 (Ind.Ct.App.1981). *But see C.N.C. Chemical Corp. v. Pennwalt Corp.,* 690 F.Supp. 139, 141–42 (D.R.I.1988) (finding a voluntary dismissal under Fed.R. Civ.P. 41(a) not to be a favorable termination under Rhode Island state law); *Glasgow v. Fox,* 757 P.2d 836, 838–39 (Okla.1988) (finding a voluntary dismissal without prejudice not to be a favorable termination due to an Oklahoma statute). In light of this strong weight of authority endorsing the Restatement's approach, this Court feels that the Nevada Supreme Court probably would approve and adopt the Restatement's test for determining when a voluntary dismissal is a favorable termination.

The Restatement's test is primarily fact-based. It provides as follows:

> *Termination in favor of the person against whom civil proceedings are brought.* Civil proceedings may be terminated in favor of the person against whom they are brought ... by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them. A favorable adjudication may be by a judgment rendered by a court after trial, or upon demurrer or its equivalent....
>
> Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for initiation, *depends upon the circumstances under which the proceedings are withdrawn.*

Restatement (Second) of Torts § 674 comment j (1976) (emphasis added).

This test recognizes that a voluntary dismissal without prejudice may or may not constitute a favorable termination. The key to determining this issue is not the form or title given to the disposition of the prior proceedings, but the factual circumstances underlying that disposition. *See Frey,* 722 P.2d at 278–79, *Nelson,* 660 P.2d at 1364–68. If the circumstances demonstrate that the underlying claim was dismissed because the plaintiff could not prevail on the merits, then the dismissal was a favorable termination. *See Frey,* 722 P.2d at 278–79; *Stanley v. Superior Court,* 130 Cal.App.3d 460, 464–65, 181 Cal.Rptr. 878, 880 (1982). If, however, the dismissal was based solely on procedural grounds, then it was not a favorable termination. For example, where the dismissal was simply a formal means of securing a negotiated settlement, it cannot serve as the basis for a malicious prosecution action. *See Barrett Mobile Home Transport,* 530 So.2d at 735–36; *Wong,* 422 N.E.2d at 1284–85. Similarly, a malicious prosecution claim cannot be premised on a dismissal that was entered to enable the plaintiff to file her claim in another forum. *See Ramsey v. Leath,* 706 F.2d 1166, 1170–71 (11th Cir.1983); *Pronger v. O'Dell,* 127 Wis.2d 292, 379 N.W.2d 330, 332 (Ct.App.1985).

In applying the Restatement's test, a court generally will have to look beyond the mere pleadings in a malicious prosecu-

tion claim. This need for extrinsic evidence arises from the test's focus on the factual circumstances underlying a voluntary dismissal. Furthermore, where these circumstances are ambiguous, or are the subject of dispute, the jury or other factfinder must determine whether these circumstances satisfy the favorable termination element. *See Frey*, 722 P.2d at 279; *Minasian v. Sapse*, 80 Cal.App.3d 823, 828, 145 Cal.Rptr. 829, 832 (1978); *Nelson*, 660 P.2d at 1368. Hence, in a malicious prosecution case that is premised on a voluntary dismissal of a prior proceeding, the need may often arise to essentially "try a case within the case." *Frey*, 722 P.2d at 279.

■ In the case at bar, a genuine issue of material fact exists in regard to the circumstances under which defendants voluntarily dismissed Abbott from their lawsuit. Defendants argue that such an issue does not exist. They maintain that this Court must presume that their voluntary dismissal of Abbott did not constitute a favorable termination. Defendants' view, however, is completely erroneous under the Restatement's test. Under this test, Abbott has satisfactorily alleged the favorable termination element merely by alleging that the underlying litigation was voluntarily dismissed. *See Colli*, 468 A.2d at 296–97; *Nelson*, 660 P.2d at 1364 (citing *Nelson v. Miller*, 227 Kan. 271, 281, 285–86, 607 P.2d 438, 446, 449 (1980)). Abbott need not allege that this voluntary dismissal was due to a lack of merit on the part of defendants' lawsuit.

Hence, on their summary judgment motion, defendants bear the burden of establishing that their voluntary dismissal of Abbott was not a favorable termination. In essence, they must show that they dismissed Abbott purely for procedural reasons, rather than due to an inability to prove him liable. Defendants have failed to meet this burden. Indeed, defendants have not submitted any evidence to this Court regarding their reasons for voluntarily dismissing Abbott from their lawsuit. Consequently, this Court cannot find that the circumstances surrounding the voluntarily dismissal preclude a reasonable jury from finding that this dismissal constituted a favorable termination on Abbott's behalf. Accordingly, summary judgment is inappropriate on Abbott's cause of action for malicious prosecution.

## ABUSE OF PROCESS

The second cause of action in Abbott's complaint alleges that the defendants' filing of their complaint and their conduct subsequent thereto constituted an abuse of process. The two essential elements of an abuse of process claim in Nevada are: "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Nevada Credit Rating Bureau, Inc. v. Williams*, 88 Nev. 601, 606, 503 P.2d 9, 12 (1972); *see also Bull v. McCuskey*, 96 Nev. 706, 709, 615 P.2d 957, 960 (1980).

Defendants argue that Abbott has not asserted sufficient facts to satisfy either of these elements. First, they contend that Abbott's deposition testimony fails to ascribe any unreasonable motive to the defendants that could be construed as an ulterior purpose for the filing of their lawsuit. Secondly, defendants maintain that their alleged conduct subsequent to the filing of their lawsuit cannot be considered in determining whether they committed an improper, willful act. They argue, therefore, that their only "willful act" was the filing of a complaint. In general, the filing of a complaint, in and of itself, is not enough to support an abuse of process claim. *See Laxalt v. McClatchy*, 622 F.Supp. 737, 752 (D.Nev.1985); *Ging v. Showtime Entertainment, Inc.*, 570 F.Supp. 1080, 1083 (D.Nev.1983).

The Magistrate found both of defendants' arguments to be without merit. *See* First R & R at 8–9; Second R & R at 3–4. This Court has reviewed the Magistrate's Reports and Recommendations and we agree with her reasoning in regard to this cause of action. Nevertheless, in order to more clearly set forth the law in this area, this Court shall briefly re-examine the flaws in defendants' arguments.

■ In regard to the first element of an abuse of process claim, an "ulterior purpose" is any "improper motive" underlying

the issuance of legal process. *See Laxalt,* 622 F.Supp. at 751. For example, the Nevada Supreme Court has held that filing a complaint in order to coerce a nuisance settlement constitutes an ulterior purpose. *See Bull,* 615 P.2d at 960. It also has held that the ulterior purpose element is satisfied where a party attaches another's property not merely to secure a debt, but rather to coerce payment of a claim. *See Nevada Credit Rating Bureau,* 503 P.2d at 12–13.

In the case at bar, Abbott has made allegations that, if believed, would constitute an ulterior purpose by the defendants. For instance, he alleges in his deposition testimony that the defendants filed suit against him in order to counter certain negative publicity that they had received in their business dealings. *See* Abbott Deposition at 153:14–19. He also contends that the defendants filed suit in order to "intimidate, outspend, and outsue" him. *See id.* at 151:6, 155:3–5. All of these allegations bespeak of improper motives. These allegations suggest that the defendants did not sue Abbott just because they felt he was liable for certain wrongdoing. Instead, according to Abbott, they sued him in order to gain some favorable publicity and in the hope of coercing a settlement. Thus, Abbott's allegations clearly satisfy the first element of an abuse of process claim.

As to the second element of an abuse of process claim, Abbott alleges several willful acts by defendants that he describes as improper. These allegations concern the sending of a copy of defendants' complaint to a local newspaper, the filing of a grievance against Abbott with the Nevada State Bar Association, and the mailing of intimidating newspaper clippings to Abbott. Defendants contend that none of these allegations can be used to satisfy the willful act element because all of these acts allegedly occurred after they filed their complaint. Defendants' contention, however, is unsupported by Nevada law. Indeed, Nevada law clearly establishes that "abusive measures taken after the filing of the complaint" may form the basis for an abuse of process claim. *Laxalt,* 622 F.Supp. at 752; *see also Bull,* 615 P.2d at 960 (attorney's minimal settlement offers made after complaint was filed held to support a jury's finding of abuse of process).

Thus, Abbott has alleged sufficient facts to support his abuse of process claim and defendants' motion for summary judgment on this claim must be denied.

## EMOTIONAL DISTRESS, CIVIL CONSPIRACY, AND PUNITIVE DAMAGES

This Court has reviewed defendants' motions to dismiss and motion for summary judgment in regard to the remaining claims in Abbott's complaint. This Court has also analyzed the Magistrate's Reports and Recommendations that advised denying defendants' motions. In addition, we have perused defendants' numerous objections to the Magistrate's Reports and Recommendations.

This Court finds that the Magistrate's Reports and Recommendations in regard to these claims are well researched and well reasoned. We also find no merit in any of defendants' objections. Accordingly, this Court shall approve and adopt the Magistrate's Reports and Recommendations that advise denying defendants' motions to dismiss/motion for summary judgment with respect to Abbott's claims of intentional infliction of emotional distress, civil conspiracy, and punitive damages.

## JUDGMENT

IT IS, THEREFORE, HEREBY ORDERED that defendants' Motions to Dismiss (documents # 2 and # 13 in CV–N–87–106–ECR) are DENIED.

IT IS FURTHER ORDERED that defendants' Motion for Summary Judgment (document # 42 in CV–N–87–106–ECR) is DENIED.

IT IS FURTHER ORDERED that to the extent set forth in this Order, the Magistrate's Reports and Recommendations (documents # 35 and # 56 in CV–N–87–106–ECR) are hereby APPROVED AND ADOPTED.